**OPERATIVE PLASTERERS AND CEMENT MASONS INTERNATIONAL ASSOCIATION LOCAL 202; Board of Trustees of the Plastering Industry Local 202 Welfare Fund and Annuity Fund; Donald LoMonaco, Individually and on Behalf of all Other Members of Operative Plasterers and Cement Masons International Association Local 202 similarly situated, Plaintiffs,**

v.

**BOARD OF TRUSTEES OF THE PLASTERING INDUSTRY WELFARE AND PENSION TRUST FUNDS and Operative Plasterers and Cement Masons International Association Local 60, Defendants.**

**No. 85 CV 3336.**

United States District Court,
E.D. New York.

April 7, 1989.

Jeffrey L. Kreisberg, Kreisberg & Maitland, P.C., New York City, for plaintiffs.

James J. Kelly, Kelly & Luglio, Deer Park, N.Y., for defendants.

## MEMORANDUM AND ORDER

McLAUGHLIN, District Judge.

This action is before the Court on cross-motions for summary judgment pursuant to Fed.R.Civ.P. 56 filed by plaintiffs ("Local 202") and defendants ("Local 60"). For the reasons discussed below, Local 202's motion is granted and Local 60's motion is denied.

### FACTS

Both Local 202 and Local 60 are affiliated with the same international union—Operative Plasterers and Cement Masons International Association ("the Union"). Local 202 has exclusive jurisdiction to perform plastering work on new construction and renovation projects within Brooklyn and parts of Long Island. Local 60 has exclusive jurisdiction to perform such work in Manhattan. Each local has established employee benefit plans within the meaning of the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.* ("ERISA").

Plastering contractors ("employers") who contract to perform work in the metropolitan area generally execute collective bargaining agreements with the various locals having jurisdiction therein. Each collective bargaining agreement provides that, in addition to wages paid directly to the employee, the employer must pay benefit contributions to the fund or funds for the local in the jurisdiction within which the work is performed. The benefit contributions are required to be paid in this fashion notwithstanding that members of one local occasionally work outside their local's jurisdiction. For example, although a member of Local 202 may perform work for an employer within the jurisdiction of Local 60, the employer will pay benefit contributions to Local 60's benefit funds. The benefit funds for the respective unions, however, have different eligibility requirements. As a result, members of one local who have worked within the jurisdiction of another local may not meet the eligibility requirements for the latter local's benefit fund and thus receive no benefits from that local's fund.

In an effort to mitigate the inequity that resulted from this arrangement, Local 202 and Local 60 executed an agreement on July 1, 1983 that provided for the reciprocal exchange of benefit contributions ("the Reciprocal Agreement"). The Reciprocal Agreement provided that each local would return all contributions received from an

employer on behalf of a member of the other local to that member's local fund. The Reciprocal Agreement also provided that its terms would be effective for two years and that thereafter, upon proper notice, either party could terminate the agreement. On June 30, 1985, Local 60 terminated the Reciprocal Agreement.

As a result of the termination of the Reciprocal Agreement and the fact that employers are performing more work in Manhattan as compared to Brooklyn, contributions are made to Local 60 benefit funds for work performed by Local 202 members in greater proportion than contributions are made to Local 202 benefit funds for work performed by Local 60 members.

Local 202 commenced this action in 1985 alleging that Local 60's refusal to transfer to Local 202 contributions received on behalf of Local 202 members violates the "sole and exclusive benefit provision" of § 302(c)(5) of the Labor Management Relations Act, 29 U.S.C. § 186(c)(5) ("LMRA") and the fiduciary duty provisions of ERISA, 29 U.S.C. § 1104.[1]

## DISCUSSION

### I. JURISDICTION UNDER THE LMRA

■ Section 302(e) of the LMRA confers jurisdiction in a district court over an action to restrain violations of § 302. Section 302(c)(5) authorizes payments by an employer to an employee representative "with respect to money or other things of value paid to a trust fund established by such representative, for the sole and exclusive benefit of the employees of such employer, and their families and dependents." 29 U.S.C. § 186(c)(5). Jurisdiction is founded under these sections when a party alleges that a "structural defect" exists in a pension or welfare plan such that the plan runs afoul of the "sole and exclusive benefit" requirement of § 302(c)(5). *See Molnar v. Wibbelt,* 789 F.2d 244, 249 (3rd Cir.1986); *Local 50, Bakery and Confectionary Workers Union v. Local 3, Bak-*

*ery and Confectionary Workers Union,* 733 F.2d 229, 234 (2d Cir.1984); *Alvarez v. Erickson,* 514 F.2d 156, 166 (9th Cir.), *cert. denied,* 423 U.S. 874, 96 S.Ct. 143, 46 L.Ed. 2d 106 (1975). Thus, jurisdiction has been extended to entertain claims brought by successor trust funds seeking to recover payments made by employers to predecessor trust funds. *See Molnar, supra,* 789 F.2d at 249; *Local 50, supra,* 733 F.2d at 234; *Alvarez, supra,* 514 F.2d at 166.

The Complaint alleges that the Local 60 defendants, conspiring with each other to deprive the Local 202 members of fringe benefits contributions paid on their behalf, terminated the Reciprocal Agreement and have since failed and refused to transfer said fringe benefit contributions to Local 202 Welfare Fund and Annuity Fund. Complaint ¶ 22. These acts, plaintiffs aver, constitute violations of § 302(c)(5) of the LMRA and § 404 of ERISA, 29 U.S.C. § 1104. *Id.* ¶¶ 24, 25. In its prayer for relief, Local 202 seeks to restrain Local 60 from retaining the fringe benefit contributions; directing reciprocal exchange of fringe benefits; and costs and attorney's fees pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g).

The Court concludes that the allegation, while not artfully pleaded, is not frivolous, *see Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946), and comes with the definition of a "structural defect" in Local 60's benefit plans. Thus, this Court's exercise of jurisdiction over the claim is proper. The Court further concludes that plaintiffs have standing to challenge the structural defect. *See Molnar, supra,* 789 F.2d at 249.

### II. MERITS OF THE LMRA CLAIM

■ In *Local 50,* the structural defect was "the *absence* of any provision in the instruments of trust requiring a transfer of funds in cases where there is an employee change to a different bargaining representative." *Local 50, supra,* 733 F.2d at 234 (emphasis supplied). This defect had a chilling effect on an employee's right to

---

1. No argument has been advanced relating to the allegation that Local 60 has violated the

fiduciary duty provisions of ERISA. The Court, however, does not need to reach this issue.

change his bargaining representative because to effect such a change would result in the forfeiture of employer contributions left in the predecessor benefit fund. *Id.* at 231.

Local 202 members face a similarly grizzly choice: members can work in the Local 60 jurisdiction, knowing that they may never be entitled to collect or enjoy the benefits paid by their employers to the Local 60 benefit plan on their behalf, or they can forgo working in Manhattan, even if that means that they sit idly in Brooklyn.

Local 60 admits that its failure to reimburse Local 202 for the money received on Local 202 members' behalf is founded on the fact that it could enrich its own coffers at Local 202's expense. Although there is no dispute that the eligibility requirements for Local 60's benefit plans apply with equal force to members of both locals—*i.e.:* there is no discrimination—there is also no dispute that those eligibility requirements are so high as to preclude enjoyment of those benefits by anyone who does not work in Local 60's jurisdiction for a substantial period of time.[2] In essence, Local 60 argues that while this arrangement may not seem fair, it is not unlawful.

Local 202 submits evidence that during the period July 1, 1985 (the date the Reciprocal Agreement terminated) to November 1, 1988, approximately $415,000 was paid to Local 60's benefit funds on behalf of Local 202 members that will not inure to the benefit of those Local 202 members absent reciprocity.[3] This evidence is uncontroverted by Local 60. While it is true that, consistent with the vagaries of the construction industry, one day there may exist more opportunities for construction work in Brooklyn as compared to Manhattan, and Local 60 members will find themselves in the same position that Local 202 members now find themselves, this prediction is cold comfort to the Local 202 members who now work in Manhattan enriching Local 60's benefit funds and will be long retired before a shift in the construction industry market ever comes to pass.

Section 302(c)(5) can, and indeed, has been employed to remedy the unjust enrichment of one local at the expense of another. *See, e.g., Local 50, supra.* Senator Ball, one of the sponsors of § 302, remarked that § 302 is intended to "protect the rights of employees to benefits out of these funds which are created by their own labor." 93 Cong.Rec. 5147 (1974) *reprinted in 2 NLRB, Legislative History of Labor Management Relations Act, 1947,* at 1498 (1948). Other remarks are similarly enlightening. *See* 93 Cong.Rec. 4876 (1974) (remarks of Sen. Taft) ("In other words, this must be a trust fund ... it is in trust for the employees, who, after all have earned the money.") *reprinted in 2 NLRB, Legislative History of the Labor Management Relations Act, 1947,* at 1311 (1948); 93 Cong.Rec. A2377 (1947) (remarks of Sen. Ball) ("Again, all we are doing is protecting the rights of the employees whose toil creates these welfare funds.") *repinted in 2 NLRB, Legislative History of the Labor Management Relations Act, 1947,* at 1524 (1948); *see also Mosley v. National Maritime Union Pension and Welfare Plan,* 438 F.Supp. 413, 420–21 & n. 7 (E.D.N.Y.1977).

Unless Local 60 is required to disgorge the contributions received from employers on behalf of Local 202 members, those contributions do not inure to the "sole and exclusive benefits" of the employee/members on whose behalf the contributions were made. "If an employer agreed to give five cents to a union trust fund for every hour of work by an employe [sic], the hourly wage paid directly to the employe [sic] would be five cents less. *It is only just, said Congress, that the employe* [sic]

---

**2.** For example the Local 60 Welfare Fund, which provides medical and other health-related coverage, requires a minimum of 500 hours for each six months of coverage. To qualify for benefits under the Local 60 Pension Fund, an employee must work a minimum of ten years at 120 hours per year.

**3.** Local 202 concedes that the $415,000 is approximate and based on a representative six-month period. Local 60 has not submitted any evidence tending to show that this figure is inaccurate or that it should be credited for sums paid into Local 202 benefit funds for work performed by Local 60 members.

**46**

*whose hour's work required the employer to make a payment of five cents to the trust fund be assured of reaping the benefit of that payment." Bey v. Muldoon,* 223 F.Supp. 489, 495 (E.D.Pa.1963), *aff'd,* 354 F.2d 1005 (3rd Cir.), *cert. denied,* 384 U.S. 987, 86 S.Ct. 1888, 16 L.Ed.2d 1004 (1966) (emphasis added). The circumstances presented in this action justify the conclusion that reciprocity is required by law.

### CONCLUSION

The Court concludes that the benefit plans maintained for Local 60 and Local 202 operate in violation of § 302(c)(5) of the LMRA. Accordingly, Local 202's motion for summary judgment is hereby granted and Local 60's motion for summary judgment is hereby denied.

SO ORDERED.